## J. C. GARRETT *vs.* H. R. MACFARLANE.

### IN EQUITY. BEFORE JUDD, C.J.

### OCTOBER, 1883.

A Court of Equity has jurisdiction to relieve against a forfeiture of land by landlord for non-payment of rent: and the objection that the tenant has a plain and adequate remedy at law, overruled.

### DECISION OF JUDD, J.

This is a bill in equity alleging that the plaintiff is the assignee of the lease of certain land at Ahuimanu, Koolaupoko, Oahu, under a certain indenture of lease dated the 16th March, 1881, and the title and interest of the lessor has been assigned to the defendant; that until the 9th March, 1883, the rent was paid; that since that date the plaintiff has been ready and willing to pay the rent, but has not known how many acres of land he was liable to pay rent for, and the defendant has not since said 9th March demanded rent from him. That on the 7th of July the plaintiff received a written notice from defendant, stating that he had taken possession of the premises, for non-payment of rent for seven months, and for abandonment of plaintiff, and defendant forthwith entered the premises, evicted the plaintiff, and has held possession ever since and prevented the plaintiff from entering upon and enjoying the same. That plaintiff had crops of sugarcane on the premises which defendant destroyed. That plaintiff has tendered to defendant the rent he believed to be due to defendant and has requested him to deliver up the premises and to make restitution for the damage done, which defendant refuses to do or to accept the rent.

That the plaintiff has suffered great damage from crops destroyed, and is liable to suffer irreparable damage by reason of being prevented by defendant from cultivating other crops of sugarcane and from erecting machinery for grinding the cane

and manufacturing the sugar and from planting new crops; that the plaintiff has no adequate relief except in a Court of Equity.

The bill prays that defendant be ordered to answer and to deliver the possession of the premises to the plaintiff, and to accept the rent which shall be adjudged to be due, and for damages for the injury done him, etc.

This is demurred to on the ground that there is nothing disclosed in the bill for which a Court of law would not furnish a complete and adequate remedy, and that this would be the ordinary action of ejectment in which both the possession of the premises and damages are recoverable.

It is urged on behalf of the plaintiff that equity has power to relieve against forfeitures incurred for a non-compliance with the terms of a lease where compensation can be decreed for the breach of the covenant.

In an early case, *Saunders vs. Pope*, 12 Vesey, 287 (1806), Lord Chancellor Erskine says: "There is no branch of the jurisdiction of this Court more delicate than that which goes to restrain the exercise of a legal right."

"That jurisdiction rests only upon this principle, that one party is taking advantage of a forfeiture, and as a rigid exercise of this legal right would produce a hardship, a great loss and injury on the one hand arising from going to the extent of the right, while on the other hand the party may have the full benefit of the contract, as originally framed, the Court will interfere, where a clear mode of compensation can be discovered." The illustration given is the case of a contract to pay rent, with a covenant and clause of entry for breach, the intention being to secure the payment of the rent and not to put the landlord to his suits from time to time but to enable him to recover possession of the premises. The Chancellor says: "In that case equity is in the constant course of relieving the tenant, he paying the rent and all expenses, and placing his landlord in exactly the same situation."

Chancellor Kent, in *Skinner vs. Dayton*, 2 Johns. Ch. Cases,

535 (1817), says: "In all the cases in which the Court does interfere with the legal right, it must clearly appear that full compensation can be made so as to render the party perfectly secure and indemnified, and place him in the same situation as if this occurrence had not happened."

Chancellor Walworth, in *Baxter vs. Lansing,* 7 Paige, 352 (1838), says: "The decisions in the more recent English cases limit the active interference of the Courts of Equity in behalf of the tenant to those cases only where the act or omission, by which the forfeiture was incurred, was the result of accident or mistake, and where compensation can be made to the adverse party; or where the penalty or forfeiture, stipulated for in the lease, is in the nature of a mere security for the payment of money."

Lord Eldon held in *Hill vs. Barclay,* 18 Vesey, 58, that "relief against forfeiture of a lease for breach of covenant was not to be extended beyond the case of payment of money, as in the instance of rents, to the other covenants, as to repair, etc."

Taylor, in his work on Landlord and Tenant, §495, says: "When a tenant has forfeited his lease by breach of the covenant for the payment of rent, Courts, both of law and equity, consider the clause of re-entry to be mainly inserted for the landlord's security, and will interfere in the tenant's behalf, although all the formalities of a common law demand may have been complied with, upon his satisfying the rent due and any damages which the landlord may have sustained in consequence of this omission. And in general, a Court of Equity will relieve the tenant from a forfeiture where it has been incurred by neglecting to pay any certain sum of money, the interest upon which can be calculated with certainty, and the landlord thereby compensated for the inconvenience he may have sustained by the tenant's withholding the payment." And again in Sec. 496, "But Courts of Equity are only closed against the tenant where the forfeiture is incurred by the wilful and culpable neglect to fulfil the terms of his covenant; and not in cases where the omission has been incurred by inevitable

accident. And the rule to be applied in all cases (except that of forfeiture for non-payment of rent) now seems to be, that Courts of Equity will relieve where the omission and consequent forfeiture are the result of mistake or accident, and the injury and inconvenience arising from it capable of compensation; but where the transgression is wilful, or the compensation impracticable, they invariably refuse to interfere."

Judge Story is to the same effect.

Discussing the jurisdiction in equity to relieve in cases of penalties in certain instruments, the design of which is to secure the due fulfilment of the principal obligation, the author says the origin of this jurisdiction is obscure. He says, further, in Sec. 1313: "It is highly probable that relief was first granted upon the ground of accident, or mistake or fraud, and was limited to cases where the breach of the condition was by the non-payment of money at the specified day." In Sec. 1314: "The true test (generally, if not universally) by which to ascertain whether relief can or cannot be had in equity, is to consider whether compensation can be made or not."

Sec. 1315: "The same doctrine has been applied by courts of equity to cases of leases, where a forfeiture of the estate and an entry for the forfeiture, is stipulated for in the lease, in case of the non-payment of the rent at the regular days of payment; for the right of entry is deemed to be intended to be a mere security for the payment of the rent." Sec. 1316: "The true foundation of the relief in equity in all these cases is, that as the penalty is designed as a mere security, if the party obtains his money or his damages, he gets all that he expected, and all that in justice he is entitled to."

The learned author, in the 1323 Sec., says that in England the law seems to be "that in all cases of forfeiture for the breach of any covenant, other than a covenant to pay rent, no relief ought to be granted in equity, unless upon the ground of accident, mistake, fraud or surprise, although the breach is capable of a just compensation." In Sec. 1324, "Courts of equity will not interfere, in cases of forfeiture for the breach of

covenants and conditions, where there cannot be any just compensation decreed for the breach."

The above doctrine seems just, and I see no reason why it should not be adopted as law in this country. It seems to me to be against conscience where, as in the lease we are considering, the clause for re-entry is intended merely as security to enforce the principal obligation, that is, the prompt payment of the rent, that this should be perverted to the deprivation of the tenant of his estate, a loss wholly disproportionate to the injury done to his landlord by the non-payment of the rent due.

The question as to whether the injury to the landlord is capable of compensation cannot be determined except upon the answer and proofs. So also the other point made at the argument, that the re-entry was made on account of the abandonment of the premises by the lessee, this cannot be considered until the proofs are in. That this ground is stated by the defendant to the plaintiff in a notice annexed to the bill, does not commit the plaintiff to its truth.

The forfeiture sought to be relieved is alleged in the bill to be for non-payment of rent, and therefore an allegation that it was not paid through accident or mistake, is not necessary.

As I find that the plaintiff has set forth in his bill sufficient facts which, if true, would entitle him to relief, the demurrer must be overruled, with leave to defendant to answer over in twenty days.

*Smith & Thurston,* for plaintiff.

*C. W. Ashford,* for defendant.

Honolulu, October 18th, 1883.