JOSEPH G. HENRIQUE *v.* JAMES R. PARIS, a minor; MARY C. PARIS, and J. D. PARIS, Jr., Administrator of the Estate of J. D. Paris, Sr., deceased.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JULY 1, 1896.          DECIDED SEPTEMBER 14, 1896.

JUDD, C.J., FREAR AND WHITING, JJ.

Specific performance of an option of purchase contained in a lease will not be decreed after a forfeiture of the lease has been incurred for breach of condition, if such breach has been persistent and wilful on the part of the lessee.

A conveyance of leased premises carries with it the right to possession upon a forfeiture for breach of condition.

OPINION OF THE COURT BY FREAR, J.

This is a suit for specific performance of an option of purchase contained in a lease from J. D. Paris, Sr., to the plaintiff.

After making the lease, the lessor conveyed the premises to defendant James R. Paris, a minor, subject to life interests in himself and his wife, the defendant Mary C. Paris. Subsequently he died, and his son, J. D. Paris, Jr., defendant, was appointed administrator of his estate.

The lease is of a stone house with three enclosed lots, 10.71 acres in area, at Kaawaloa, South Kona, Hawaii, for a term of twenty years from the first day of October, 1888, "and upon the fulfillment of the conditions hereinafter set forth." Then follow five covenants by the lessee in separate paragraphs, the second of which is a covenant "to clear the lantana from all the said enclosed lots within eighteen months from date, and to keep them clear until the termination of said lease." Following these covenants of the lessee is a covenant of the lessor for quiet enjoyment "the lessee fulfilling the terms and conditions herein stated." Following this is a separate paragraph, as follows: "Moreover the lessee shall have the privilege of purchasing said property with 2 acres of land more or less additional to square two corners of the lot, when he shall have paid the sum of $450.00 to the lessor or to his legal representatives." Finally there is a paragraph providing for reentry in case default shall be made in fulfilling any of the conditions of the lease.

The lessor and, after his death, his son, J. D. Paris, Jr., as administrator of his estate, accepted rent ($50 per annum, payable quarterly in advance) until April 1, 1895. On April 30, 1895, J. D. Paris, Jr., as administrator, sent the lessee a notice to quit for breach of the condition to clear the land of lantana. A day or two later he was tendered the rent for the quarter beginning April 1, 1895, which he declined to receive. He then instituted proceedings and obtained judgment for possession of the premises, in the District Court of South Kona. The case was appealed to the Circuit Court, where it is still pending. On or about June 3, 1895, on advice of counsel, J. D. Paris, Jr., went upon the premises and read two notices, one on behalf and as guardian and father of J. R. Paris, the other on behalf and by the authority of Mary C. Paris, in each of which notices he stated that he entered upon the premises and took possession of the same for breach of the conditions, terms and covenants of the lease, and demanded immediate and peaceful surrender of the premises, which was refused. August 8, 1895, Mary C. Paris

released and quit-claimed the premises to James R. Paris. August 21, 1895, James R. Paris, by J. D. Paris, Jr., as guardian *ad litem* and next friend, brought ejectment for the premises against the lessee, in the Circuit Court. In October the lessee tendered J. D. Paris, Jr., for the land $450 (which was declined), and on November 20, 1895, brought this suit.

At the commencement of the lease, October 1, 1888, a large portion of the land was covered with lantana; at the end of the first eighteen months a little over half of this land had been cleared. On April 30, 1895, the date of the first notice to quit, there was still about three-fourths of an acre of the original growth of lantana on the land, and considerable young lantana, two or three feet high, scattered over the land in patches. On June 3, 1895, the date of the second notice and entry, most of the old lantana had been cleared, but there was a large growth of young lantana, nearly all in flower and some in seed, some of which was still on the land after the commencement of this suit in November.

It is argued for the defendants that the effect of the word "moreover" at the beginning of the option paragraph in the lease is to incorporate in that paragraph the clause "the lessee fulfilling the terms and conditions herein stated," found in the preceding paragraph relating to quiet enjoyment, and so make the exercise of the purchase option expressly dependent upon the performance of a condition precedent, failure in the performance of which would work a forfeiture of the option, notwithstanding the continuance of the lease by the acceptance of rent, and thus bring the case within the principles governing *Gilbert v. Port*, 28 Oh. St. 276, and *Steele v. Bond*, 32 Minn. 14. But it seems to us that the case is more analogous, so far as the construction of the instrument is concerned, to *Hagar v. Buck*, 44 Vt. 285, relied on the plaintiff. See also *Green v. Low*, 22 Beav. 625. In *Hagar v. Buck* there were covenants to build a house of a certain kind and size within two years, and to keep houses in repair; a covenant of quiet enjoyment on condition of

performance of the lessee's covenants; an option of purchase upon payment of $500, and power to enter and take possession upon breach of the lessee's covenants. The Court held that the option of purchase might be exercised so long as the lease was continued in force by the acceptance of rent, notwithstanding failure to keep the covenants; that the right to enter for breach of the covenants was waived so long as rent was accepted, but no longer, the covenant to repair being a continuing one; and that although entry had been made for breach of this covenant, equity would relieve against the forfeiture because it would work a hardship to the lessee and full compensation could be made to the lessor.

Courts of equity regard the performance of covenants in leases as the real object desired, and the right of entry as mere security for such performance, and so they do not always hold parties strictly to their legal rights, but often relieve against a forfeiture, especially if full and exact compensation can be made to the injured party. Accordingly, in case of a breach of a covenant to pay rent, relief is generally granted against a forfeiture, because payment of the rent with interest thereon is deemed full and exact compensation. But in the case of other covenants, as to repair, insure, clear off lantana, &c., relief will not generally, except in cases of fraud, mistake, accident or surprise, be granted, because the exact compensation cannot be ascertained. And even in cases where exact compensation can be made, relief will not be granted if the breach is due to gross negligence or is persistent and wilful on the part of the lessee.  See *Garrett v. Macfarlane,* 6 Haw. 435; 1 Pom. Eq. Jur., Secs. 452-454; Taylor, Ld. & Ten., Sec. 496.

In *Hagar v. Buck, supra,* the Court went so far as to relieve against a forfeiture incurred for a breach of a covenant to repair, but this was expressly on the ground that the option to purchase for a definite sum brought the case within the rule applicable to cases where full compensation can be made; for, upon the lessor's parting with all his interest in the premises by a convey-

ance thereof for the sum agreed upon, it would, thought the Court, be immaterial to him whether the covenants had been kept or not. And although that case seems to have gone about as far as any in this direction, we might nevertheless feel obliged to follow it, if it were not distinguishable from the case at bar.

It seems to us that the present case, unlike the Vermont case so far as appears, is one of those in which the breach has been persistent and wilful. It appears that the lessee might by reasonable effort have cleared the land within the first eighteen months and kept it clear afterwards. And although rent was accepted, and this may have technically constituted a waiver of the breach for the purpose of continuing the purchase option as well as the lease proper, until April 1, 1895, yet the tenant was not thereby led to believe that the breach was acquiesced in or that a forfeiture would not be enforced, for repeatedly during nearly the whole period, at least after the expiration of the first eighteen months, he was urged to clear the land, and was told that he had lost his option by his failure to do so, and was warned that he would lose his lease also if he did not keep his covenant; but, to judge from his own testimony as well as that of J. D. Paris, Jr., the principal witness for the defendants, he was indifferent to these warnings, and disposed to clear the land solely with a view to his own convenience, regardless of his duty under the covenant. The breach continued the whole period—including over seven months after rent was refused, and when there was not even a technical waiver; and not until the lapse of a considerable time after the bringing of the action of ejectment, to say nothing of prior efforts to recover the premises from the lessee for breach of his covenants, did he attempt to exercise the option to purchase. The legal right under such circumstances is with the landlord, and if the tenant desires to be relieved from the consequences of his own acts, it must appear at least that he has not persistently and wilfully neglected to perform his own obligations. He who comes into equity must do so with clean hands.

It is, however, argued that the lessor's grantee did not succeed

to the right to enter and take possission for breach of condition. This seems to have been the rule at common law. Co. Litt., 214a. "But now," says Taylor, Ld. & Ten., Sec. 440, "a conveyance of leased premises, without reservation, carries with it all the grantor's rights in the lease, including the right to possession upon a forfeiture for the breach of any of its conditions, and excepts only such obligations as are merely collateral thereto, or of a personal character." This change in the law was made by statute in England (32 Hen. VIII. c. 34), and in many of the United States, but in some States it appears to have been adopted without the aid of statute. See *Page v. Esty*, 54 Me. 319; *McGuffie v. Carter*, 42 Mich. 497; *McKissick v. Pickle*, 16 Pa. St. 140. Another branch of the same rule at common law prevented a reservation of rent from passing to a lessor's grantee. Co. Litt., 213b. This also has been changed by statute in England, and partly by statute and partly by judicial decisions in America. Taylor, Ld. & Ten., Sec. 439; *Perrin v. Lepper*, 34 Mich. 292; *Burden v. Thayer*, 3 Metc., 76.

The old rule is a provision of the feudal law, and grew out of a state of society which does not exist in these Islands. There is not now and here the necessity that there was in England in the Middle Ages for laws against champerty and maintenance to prevent the stirring up of suits for purposes of oppression, nor any reason why a landlord should not convey his estate without the consent (attornment) of his tenant. Freedom rather than restraint of alienation is required under present conditions. The reasons for this rule having ceased, the rule itself should also cease. And there can be little doubt that lessors' grantees have hitherto in these Islands acted accordingly and exercised the right of entry for breach of condition, although we do not know of any judicial decision directly upon the subject. In *Davis v. Spencer*, 3 Haw. 274, the Court suggested, but did not decide, the question whether our statute did not go so far as to give the right of entry to the lessor's grantee. See Civ. Code, Sec. 939, relating to summary proceedings to recover possession. In *Gar-*

*rett v. Macfarlane,* 6 Haw. 435, the Court, while it did not expressly refer to the question, assumed that the lessor's grantee might exercise the right of entry, for it held (on demurrer) that equity would relieve against the forfeiture. There would have been no necessity for so holding, and the lessee would have had an adequate remedy at law, if the grantee of the reversion could not have lawfully entered. See also *Kuamu v. Iaukca,* 9 Haw. 612. We are of the opinion that the old common law rule in question is not law here, because it is "otherwise established by Hawaiian national usage." Laws of 1892, Ch. 57, Sec. 5.

The decree appealed from dismissing the bill with costs is affirmed.

*A. G. M. Robertson* for plaintiff.

*Kinney & Ballou* for defendants.