WILLIAM O. SMITH, E. FAXON BISHOP, ALBERT F. JUDD, RICHARD H. TRENT AND GEORGE M. COLLINS, TRUSTEES UNDER THE WILL AND OF THE ESTATE OF BERNICE P. BISHOP, DECEASED, *v.* A. W. T. BOTTOMLEY, J. L. COCKBURN, HARRIET S. DAMON AND HENRY HOLMES, EXECUTORS OF THE WILL OF SAMUEL M. DAMON, DECEASED.

No. 1867.

Argued February 8, 1929.    Decided March 2, 1929.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY PERRY, C. J.

In an action of assumpsit to recover damages for the alleged breach of a covenant in a lease, the trial judge sustained a demurrer to a second amended declaration

and dismissed the action. The plaintiffs thereupon sued out a writ of error to review the decision upon which the order of dismissal was based. The allegations of the second amended complaint are in brief as follows: that by certain leases and extensions thereof the plaintiffs and their predecessors in interest demised to S. M. Damon the ili of Maunalua, on the Island of Oahu, and that the said Damon during his lifetime and after his death the respondents, who are the executors of his will, held the said land as lessees from a date prior to March 8, 1910, continuously to the date of the expiration of the last of the leases, to-wit, September 30, 1924; that in the two latest leases of the series, to-wit, one dated March 8, 1910, and the other dated December 17, 1914, the lessee on behalf of himself and his executors and administrators, covenanted with the respondents or lessors "that at the end of said term or sooner determination of this lease he will peaceably deliver up to the lessors possession of the said demised premises together with all improvements upon or belonging to the same by whomsoever made, in good repair, order and condition;" that at the beginning of the continuous term created by these successive leases the lessors delivered actual possession of the demised property to the lessee and that during the entire period of the leases the said Damon as lessee had actual possession of the demised land of Maunalua under and pursuant to the terms of the leases; "that in or about the year 1911, the said Samuel M. Damon permitted one David Kui Laamea to occupy a portion of the said land of Maunalua, demised to him as aforesaid, namely, a lot adjoining the beach containing an area of 1.60 acres, or thereabouts, upon the understanding and agreement between them that the said David Kui Laamea, for the privilege of occupying said lot, should pay to the said Samuel M. Damon the sum of one dollar per year, and

render and perform certain labor and services as required by said Samuel M. Damon, and that pursuant to said understanding and agreement said David Kui Laamea thereupon entered upon and occupied said parcel of land and continued to occupy the same until the expiration of the term of the lease of said Samuel M. Damon and thereafter as hereinbelow alleged;" that on September 30, 1924, upon the expiration of the last of the leases, possession of the ili of Maunalua, which is a large tract of land, "was surrendered to the lessors except that portion consisting of said lot occupied by said David Kui Laamea;" that Laamea "refused to vacate or give up possession of said land so occupied by him and asserted a claim of title thereto by adverse possession, the plaintiffs herein having had no previous notice or knowledge of any such claim on the part of" Laamea; that on October 13, 1924, plaintiffs instituted against Laamea an action to quiet the title to the parcel of land occupied by him; that after two jury trials, the first ending in a disagreement, a verdict was rendered for the plaintiffs and judgment was entered upon the verdict; that upon a writ of error this court affirmed the judgment; that on November 22, 1924, plaintiffs notified the defendants of the possession and claim of Laamea and of the action brought against him and requested the defendants to state whether they would prosecute the action or whether they preferred that the plaintiffs should prosecute it at their expense and that later the plaintiffs notified the defendants that the action was about to go to trial and that defendants made no answer to these communications; that the reasonable value of the use and occupation of the land of which Laamea held possession from October 1, 1924, until the plaintiffs were restored to possession on May 11, 1927, was the sum of $2588, and that the necessary cost and expense to the plaintiffs of obtaining the possession amounted to the

sum of $5043.01. Plaintiffs prayed for judgment for $7631.01, being the total of the two sums above stated.

Upon principle we think that the plaintiffs have a cause of action and should recover. The language of the covenant is unambiguous and its meaning clear. The undertaking of the lessee was that he would, at the end of the term of the lease, "deliver up to the lessors possession of the said demised premises." As to the small portion occupied by Laamea, his executors did not do so. Judicial proceedings became necessary to restore possession to the plaintiffs, the original owners and lessors.

At the inception of the lease or succession of leases, the lessors gave actual possession of the land to the lessee. They entrusted it to his care. They required of him in advance a covenant to give back to them at the end of the lease that same possession. Laamea entered as a subtenant of the lessee. Of this there is no doubt, upon the pleadings. Likewise, during the remainder of the term of the leases he continued to be the subtenant of the lessee. This, also, is made clear in the declaration. The allegations show that although Laamea set up a claim of adverse possession, the claim was a fancied one and that the truth was that his occupation was permissive and as subtenant of the lessee. The jury so found and so declared by its verdict. Upon principle, then, the case is the same as that of any other subtenant who insists on holding over, after the expiration of the term of the original lease, upon some fancied claim. Such unfounded claims differ in different cases. There is always some reason or pretext advanced by a subtenant holding over for his refusal to vacate. The same principle does and should apply in all such cases. The duty of the lessee to so arrange his affairs during the term of the lease as to be able to surrender actual possession on or immediately after the last day of the lease is the same in all such cases. The duty

is upon the lessee to ascertain, in ample time, whether a subtenant is setting up a spurious claim and to take such steps as may be necessary to restore the possession before the expiration of the lease, so that he may be able to deliver that possession to those entitled thereto at the end of the term.

The decision of the court in *Henderson* v. *Squire,* 4 L. R., Q. B. Cases, 170, 173, 174, a case of an implied covenant to restore possession, supports these views. Cockburn, C. J., said: "I am prepared to abide by the law as laid down by Lord Kenyon in *Harding* v. *Crethorn,* that 'when a lease is expired the tenant's responsibility is not at an end; for if the premises are in possession of an under-tenant, the landlord may refuse to accept the possession, and hold the original lessee liable; for the lessor is entitled to receive the absolute possession at the end of the term.' That has been considered law ever since, and has been recognized as law in all the text books. In the case of *Christy* v. *Tancred,* though the facts are not exactly the same, for that was a case of a co-tenant holding over, Parke, B., adopts the ruling of Lord Kenyon. We should be doing great mischief if we were to lay down a contrary rule. This case is plainly distinguishable from that of a joint-tenant holding over. In the case of joint-tenants the lessor himself creates the joint tenancy; but the case of a sub-tenant is different—he has been let into possession not by the lessor but by the tenant. The landlord is entitled to recover all the loss he has sustained by not being put in possession of the entire premises at the end of the term; he is entitled to a sum equivalent to the rent which he has lost, and to the expenses he has been put to in taking legal proceedings to oust the sub-tenant from a wrongful possession." Blackburn, J., said: "I am of the same opinion. The question is, where there is a tenancy, and nothing is expressed as

to delivering up possession at its determination, whether there is an implied contract that the tenant shall not only go out of possession, but restore the possession to the landlord. Here the tenant had sublet the premises to a man who, under some fancied claim of right, held over without the consent and against the will of the tenant, his landlord. I think that there is such an implied contract; for as the landlord who is to put the tenant into possession could not fulfil his contract unless he put him into absolute possession, the obligation on the part of the tenant at the end of the term is correlative. Lord Kenyon in *Harding* v. *Crethorn* expressly rules that 'the lessor is entitled to receive the absolute possession at the end of the term,' and he further lays down the artificial rule, that the lessee would be liable for rent not on an actual but constructive occupation by the under-tenant holding over. After this ruling of Lord Kenyon, in 1793, the case of *Christy* v. *Tancred* came twice before the Court of Exchequer: in the first case Parke, B., seems to have applied the rule laid down by Lord Kenyon to joint-tenants as well as sub-tenants; in the second case the doubt was, not whether Lord Kenyon was wrong in the rule he had laid down, but whether, where premises are let to co-tenants, and one holds over without the assent of the other, both are liable in an action for use and oc-cupation. It is true that there is very little authority on the question under discussion; but, independently of authority, on principle, seeing that the landlord gives the tenant absolute possession, it is the duty of the tenant to restore absolute possession." See also 2 Thompson on Real Property, Sec. 1480.

It is true that the word "possession" is susceptible of various meanings and that under some circumstances courts have found difficulty in construing it; but no such circumstances exist in the case before us. There ought

to be no difficulty in understanding its meaning as used in the covenant under consideration. It means the actual dominion and control of the property, free from interference by any hostile claimant, with the complete use and enjoyment of the property. It means the same complete dominion and ability to hold and enjoy which the lessee had a right to expect from the lessors when he first accepted the lease and which was actually accorded to him by the lessors at that time.

The damages must be "measured by the loss actually sustained." *Montgomery Co.* v. *Lumber Co.*, 206 Mass. 144, 157. "A wrongdoer is answerable for all the injurious consequences of his tortious act which, according to the usual course of events and general experience, were likely to ensue and which therefore, when the act was committed, he may reasonably be supposed to have foreseen and anticipated." *Bergquist* v. *Kreidler*, 196 N. W. (Minn.) 964, 965. The expenses necessarily incurred in securing possession are a part of the loss incurred by reason of the lessee's failure to perform his covenant. So also is the value of the use and occupation of which the lessors have been wrongfully deprived. The lessee's omission was the proximate cause of both elements of damage. Both could have been and should have been, according to the usual course of events and general experience, foreseen and anticipated as consequences of the omission. See *Smith* v. *Bolles*, 132 U. S. 125, 130, and *Westfield* v. *Mayo*, 122 Mass. 100, 105.

The order sustaining the demurrer to the second amended complaint and dismissing the action is reversed and set aside and the case is remanded to the circuit court for such further proceedings as may be appropriate, not inconsistent with this opinion.

*A. G. M. Robertson* (*Robertson & Castle* on the briefs) for plaintiffs in error.

860

*J. P. Beek* (*Prosser, Anderson & Marx* with him on the brief) for defendants in error.