FOOD PANTRY, LTD., Plaintiff-Appellant, Cross Appellee, *v.* WAIKIKI BUSINESS PLAZA, INC., Defendant-Appellee, Cross Appellant

NO. 5747

FEBRUARY 10, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY MENOR, J.

This is an action for a declaratory judgment. The plaintiff below is the lessee, Food Pantry, Ltd. The defendant is the lessor, Waikiki Business Plaza, Inc. The controversy stems from the Lessee's assignment and subleasing of the premises without the prior written consent of the lessor which, upon subsequent request, the lessor refused to give. In its complaint the lessee sought an adjudication requiring the lessor to consent to the assignment and subleases. The lessor responded to the lessee's complaint with a counterclaim asking the court to find that the lessor had the right to terminate the lease and praying that it be allowed damages, costs, and attorney's fees.

The trial court found that the lessee was in material breach of the non-assignment provision of the lease and awarded the lessor damages based upon what the court considered to be the fair market rental for the leased premises at the time of the first of such unpermitted assignments and subleases. The trial court also found that the lessor was entitled to terminate the lease for breach of the non-assignment covenant; however, it refused to allow the lessor to terminate the lease so long as the lessee rescinded the transactions constituting the breach or, in the alternative, paid the lessor the fair market rental for the balance of the term. It also awarded the lessor damages based on fair market rental for breach of the non-assignment covenant. The trial court, however, denied the lessor's request for costs and attorney's fees. Judgment was entered by the trial court on May 15, 1974. Both parties appeal.

I

In 1965, Waikiki Business Plaza leased to Food Pantry, for a term of ten years expiring May 31, 1975, certain space on

the ground floor of a building in Waikiki, with the lessee's use limited to the maintenance and operation of a business described as "[a] specialized gourmet and grocery store selling items normally sold in such stores; and liquor, drugs and a fountain." By the lease, the lessee covenanted that it would not assign or sublease without the prior written consent of the lessor, which consent should not be arbitrarily or unreasonably withheld or conditioned on the payment of money or anything else of value, except reasonable costs. By a letter agreement between the parties, of May 23, 1969, the lessor consented to the use of the premises for a McDonald's restaurant, upon the express understanding that the franchise would be in the name of the lessee, which would not assign the lease without the prior written consent of the lessor, "and that the Lessor may withhold such consent in its discretion." The letter stated that the lease would be amended appropriately to incorporate the terms of the letter agreement. A subsequent letter agreement of July 18, 1969, provided for review and approval by the lessor of all franchise documents pertaining to the operation of the premises and provided that the lease should be amended to provide expressly that any default under such documents would constitute a default under the lease. No other documents were executed to effect the amendments of the lease agreed upon in these letters.

By documents effective as of July 1, 1970, the lessee assigned an undivided one-half interest in the lease to Franchise Realty Interstate Corp. (FRIC). The lessee and FRIC then subleased the restaurant area of the leased premises to McDonald's of Waikiki, Hawaii, Inc. and the balance of the area to the lessee. Both FRIC and McDonald's of Waikiki were wholly owned subsidiaries of McDonald's Corporation. Either as of October 14, 1970, or an earlier date, the lessee's and FRIC's respective one-half interests in the lease were assigned to a limited partnership, McDonald's of Hawaii Development Co., of which FRIC was one of the general partners. Pursuant to these transactions, McDonald's of Waikiki and the lessee paid to FRIC a rental higher than that fixed in the lease, and FRIC in turn paid such rental to

McDonald's of Hawaii Development Company.

By letter dated July 1, 1971, the lessee's attorney advised the lessor in general terms of these transactions and requested the consent of the lessor to the assignment and the two subleases above mentioned. The lessor replied by a letter calling attention to the March 23, 1969, letter agreement and stating that an increase in rent had not been insisted upon at the time consent was given to the change of use to a McDonald's restaurant "as a personal favor." The lessor's letter went on to say: "However, inasmuch as a large mainland chain is now actually involved in your ownership and operations, we feel that it is only fair that such operations should pay the current fair market rental." A new rental was proposed, effective July 1, 1970, which included a minimum fixed rent and a percentage of gross sales. After meetings and correspondence failed to resolve the matter, the lessor wrote to the lessee on December 8, 1971, in part as follows: "Unless your said defaults are cured or another arrangement satisfactory to us is agreed upon, on or before December 17, 1971, we intend to terminate your lease." The lessee's response was to file its action for declaratory judgment on December 20, 1971.

II

The basic issue raised by the lessee in its appeal is, whether the lessor was entitled to withhold its consent to the assignments and subleases which gave rise to the present controversy. The lessee argues that the lessor was not entitled to withhold its consent to these transactions because, regardless of the lease language, a lessor may not unreasonably withhold its consent, and further suggests that the sole motive of the lessor for withholding its consent was to compel the lessee to agree to an increase in rent.

There is no doubt that a covenant by the lessee not to assign the lease or sublet the premises will be given effect, though subject to strict construction. 1 American Law of Property ¶ 3.58 (1952). Our first inquiry, therefore, seeks the intent of the parties as expressed in their documents. Absent the letter agreements, the terms of the lease would have

placed the lessor's insistence on an increase in the lease rent, as a condition to its consent, outside the freedom which it reserved to itself to withhold consent, and would raise the question whether the breach by the lessee was cured by the lessor's later invalid refusal of consent. However, we regard the letter agreements, as also apparently did the parties, as effective amendments of the lease despite the unfulfilled intention of the parties to embody them in formal amendatory documents. It is necessary to read these documents together to ascertain what agreement the parties expressed with respect to the freedom of the lessor to withhold its consent.

The lease qualified the lessor's freedom by providing "that the Lessor shall not arbitrarily or unreasonably withhold such consent and provided further, that the Lessor shall not require the payment of money or anything else of value as a condition of giving such consent, except for reasonable costs and expenses . . . ." The letter agreement of May 23, 1969, however, which arose out of the lessee's request for consent to install a McDonald's restaurant, premised the giving of consent to this change in use upon the incorporation of the following into the lease:

> "It is understood, of course, that the franchise deal will be in the name of the Lessee. It is further understood that inasmuch as this is a franchise deal under a large mainland chain, that the Lessee will not assign nor mortgage the lease or sublet the whole or any part of the demised premises or any of the Lessee's rights thereunder, without the prior written consent of the Lessor, and that the Lessor may withhold such consent in its discretion."

The lessee argues that notwithstanding this language, the lease continued to provide that the lessor could not seek the payment of money as a condition to giving its consent to an assignment. This result is reached by treating the words "and that the Lessor may withhold such consent in its discretion" as in substitution for the first lease proviso, "provided, however, that the Lessor shall not arbitrarily or unreasonably withhold such consent," and as leaving untouched the second proviso, "provided, further, that the Lessor shall not

require the payment of money or anything else of value as a condition of giving such consent." The trial court found as fact and also concluded as law that both provisos of the lease had been superseded by the letter agreement. Among other indications of the parties' intent which were before the trial court is a letter from the lessor to the lessee, dated May 9, 1969, which states that a review of the requested change in use which is consented to by the May 23, 1969, letter "will necessarily entail a complete study of the terms of your lease, including the rental charged thereunder." In construing the lease and the amendments the trial court was required to take into consideration the circumstances under which they were entered into by the parties. *Hokama v. Relinc Corp.*, 57 Haw. 470, 559 P.2d 279 (1977). In addition to the May 9, 1969, letter to which we have referred, the trial court heard testimony dealing with these circumstances. We conclude that we should accept the trial court's resolution of the ambiguities in the lease documents. This conclusion extends to the trial court's determination of the question whether it was within the discretion of the lessor, as reserved to it in the May 23, 1969, letter, to require an increase in rent as a condition to its consent to the assignments and subleases. Without deciding whether, under other circumstances,[1] a lessor's discretion to withhold consent would be more constricted, we accept the trial court's conclusion that the lessor was in compliance with its obligations under the lease, as amended, in refusing the requested consent in this case. It follows, therefore, that the transactions engaged in by the lessee were in material breach of its covenant.

III

The lessor in its appeal contends that a material breach on the part of the lessee having been established, it should have been permitted to terminate the lease.

---

[1] See Annotation, 54 A.L.R.3d 679 et. seq.

In this case the trial court found that the lessee had materially breached its non-assigment covenant and that under the strict terms of the lease, the lessor was entitled to terminate the lease. It nevertheless concluded that it would not permit the lessor to terminate the lease, explaining that "[t]he Court, sitting in equity, has the power to mold a decree that would grant appropriate relief to Defendant [lessor] without creating an extreme hardship to Plaintiff [lessee], despite Plaintiff's breaches."

The lessee does not question the rule that where the lease so stipulates, a leasehold may be forfeited for a material breach of covenant. *See Hawaiian Homes Commission v. Bush,* 43 Haw. 281 (1959). It does contend, however, that even if it had breached its non-assignment covenant, the trial court was nevertheless empowered to grant the lessee relief from forfeiture of the lease. We agree.

In an action for declaratory judgment, the court is empowered to grant ancillary equitable relief. HRS § 632-3; *Travelers Indemnity Co. v. Beaty,* 523 S.W.2d 534 (Mo.App. 1975); *Laurance v. Security First National Bank,* 220 C.A.2d 622, 34 Cal. Rptr. 56 (1963); *Koziol v. Village of Rosemont,* 32 Ill.App.2d 320, 177 N.E.2d 867 (1961); *First Nat. Stores v. Yellowstone Shopping Center,* 21 N.Y.2d 630, 290 N.Y.S.2d 721 (1960). And in the exercise of its general equity jurisdiction over forfeitures and penalties, it may afford relief against forfeiture for the breach of a covenant in a lease. *Gonsalves v. Gilbert,* 44 Haw. 543, 356 P.2d 379 (1960); *Kanakanui v. DeFries,* 21 Haw. 123 (1912); *Lau Dan v. Ah Leong,* 19 Haw. 417 (1909); *Henrique v. Paris,* 10 Haw. 408 (1896); *Garrett v. Macfarlane,* 6 Haw. 435 (1883). The basic rationale for affording relief in these cases was expressed by this court in *Henrique v. Paris, supra,* at 411:

"Courts of equity regard the performance of covenants in leases as the real object desired, and the right of entry as mere security for such performance, and so they do not always hold parties strictly to their legal rights, but often relieve against a forfeiture, especially if full and exact compensation can be made to the injured party."

Equity does not favor forfeitures, and where no injustice would thereby be visited upon the injured party, equity will award him compensation rather than decree a forfeiture against the offending party. *Bohnenberg v. Zimmermann,* 13 Haw. 4 (1900). Accordingly, where the lessee's breach has not been due to gross negligence, or to persistent and wilful conduct on his part, and the lessor can reasonably and adequately be compensated for his injury, courts in equity will generally grant relief. This matter is addressed to the sound discretion of the trial court acting in accordance with established principles of equity, and its determinations will not be set aside unless manifestly against the clear weight of the evidence. *See First Hawaiian Bank v. Smith,* 52 Haw. 591, 483 P.2d 185 (1971). And in exercising its equity powers to relieve from forfeiture, the trial court is empowered to fashion a decree to meet the requirements of the situation and to conserve the equities of the parties. *Fleming v. Napili Kai, Ltd.,* 50 Haw. 66, 430 P.2d 316 (1967), *reh. denied* 50 Haw. 83, 431 P.2d 299 (1967).

The trial court in this case might well have found the lessee's breach to have been persistent and wilful, in which event it would have been fully justified in decreeing a forfeiture. The record shows that the transactions constituting the breach became effective October 14, 1970, retroactive to July 1, 1970, without any prior knowledge whatsoever on the part of the lessor regarding these transactions. It was not until on or about July 1, 1971, that the lessor learned for the first time of the assignments and subleases. The lessor's response to this information, however, was an offer to consent to the transactions provided an increased rental was made payable retroactive to July 1, 1970. Despite its contention that the unapproved assignments would effect a destruction of the relatively sensitive and personal nature of the working relationship between its principal officer and that of the lessee, which presumably had been a significant factor in the consummation of their agreement, the lessor was nevertheless willing to waive the lessee's breach upon the payment of the higher rental. The assignments and subleases effected no change in the approved use of the premises, and while the

trial court made no express finding relative thereto, there was testimony on behalf of the lessee (disputed only inferentially by certain documents introduced at trial) that these transactions were, by agreement of the parties thereto, subject to cancellation upon the refusal of the lessor to give its consent. Under these circumstances, the considerations which originally moved the contracting parties to enter into their lease, as well as the lessor's security interests therein, cannot be said to have been irretrievably compromised. Moreover, the decreed continuation of the lease was conditioned upon the cancellation and rescission of the unpermitted assignments and subleases, or, in the alternative, the payment by the lessee of a higher rental for the balance of the term. Accordingly, we are not prepared to hold that the trial court clearly abused its discretion in refusing to allow the lessor to terminate the lease.

## IV

In its judgment the trial court awarded to the lessor, Waikiki Business Plaza, the difference between the rental paid under the lease and the fair market rental for the leased premises at the time of the first unpermitted assignments and subleases, which date the trial court determined to be September 27, 1970, for the remainder of the term of the lease or until these transactions were rescinded. The effect of this judgment was to award the lessor damages for which there was no factual foundation.

There appears to be no doubt that a lessor may recover actual damages suffered from the breach of a covenant against assignment or subletting, although he chooses not to terminate the lease. 1 American Law of Property § 3.58 (A.J. Casner Ed. 1952). The cases cited for this proposition are of long standing. In *Rouiaine v. Simpson*, 84 N.Y.S. 875 (1903), the insurance rate was raised by reason of the use made of the premises by an unpermitted sublessee. The lessor was

awarded the amount of the extra insurance premiums as damages, although he had waived the right to terminate the lease by accepting rent. In *Lepla v. Rogers*, 1 Q.B. 31 (1893), a sublease was made, without consent and in breach of covenant, for a dangerous use which resulted in destruction of the premises by fire. It was held that the fire loss was a natural result of the breach of covenant and recoverable as damages by the lessor. But the lease in this case was never terminated by the lessor, and we are aware of no authority which would permit the lessor to retain the lease, and his right thereunder to receive payment of the agreed lease rent, while being awarded as damages for the breach of such a covenant the value of the use and occupation of the property in excess of the lease rent. *See Weisman v. Clark*, 232 C.A.2d 764, 43 Cal. Rptr. 108 (1965).

In its attempt to support the trial court's award of the value of the use and occupation of the land as compensatory damages for the breach of the lessee's covenant, the lessor relies upon cases in which such damages have been awarded for the continued occupation of the land after the termination of a lease. Thus, in *Fay v. Klots*, 199 N.Y.S. 49 (1923), upon which the lessor principally relies, it was held that an unauthorized subletting automatically worked a forfeiture of the lease and that the lessor had re-entered by filing ejectment proceedings. In early cases, a holdover tenant was treated as a trespasser from whom the lessor was entitled to recover mesne profits. Later cases treat the action as founded upon the tenant's breach of his contract to surrender possession and awards as damages the value of its use and occupation, being the fair rental value of the property, together with any special damages. 1 American Law of Property § 3.36 (1952). *See Smith v. Bottomley*, 30 Haw. 853 (1929).

Where the lease continues in effect, the lessee cannot be regarded as a trespasser, and there will have been no breach of the covenant to surrender possession. Damages for the breach of a covenant by the lessee during the continuance of the lease must be determined on the principles which govern the assessment of contract damages. *Brown v. Robyn Realty Co.*, 367 A.2d 183 (Del. 1976); *Rojan Enterprises v. Schein-*

*man,* 108 N.Y.S.2d 566 (1951). This rule applies with equal force to suits in equity where damages are assessed, as ancillary to the main relief sought. *Osage Oil & Ref. Co. v. Chandler,* 287 F. 848 (2d Cir. 1923). The lessor here is entitled to recover as damages for the breach that amount which will place it in the same position it would have been in had the covenant against assignment and subletting not been breached by the lessee. "The primary aim in measuring damages is compensation, and this contemplates that the damages for breach of contract should place the plaintiff in the position he would be in if the contract had been fulfilled." McCormick, Damages ¶ 137 at 560 (1935).

So long as the lease remained in effect and the lessor received the rent for which it had bargained, it suffered no loss or deprivation of use and occupation of the premises and payment of the rent placed it in the same position, in this respect, as it would have been in had the lessee not made any assignment or sublease of the premises. It was error for the trial court to award use and occupation damages. There was no contention or finding that the lessor had suffered loss of any other nature as the result of the lessee's breach of its covenant. In this state of the record, as in *Ferreira v. Honolulu Star-Bulletin, Inc.,* 44 Haw. 567, 356 P.2d 651 (1960), only nominal damages and costs should have been awarded for the lessee's breach of the non-assignment covenant.

There is, however, another aspect of this case which moves us to limit the award of nominal damages for the breach to the period prior to April 25, 1973. On that date the trial court orally decreed that it would not permit the lessor to terminate the lease and would allow its continuation only on the condition that the lessee rescinded the transactions constituting the breach, or, in the alternative, paid the fair market rental for the balance of the term. And because the determination of fair market rental was being deferred to a future date, it directed the preparation and entry of an interlocutory decree embodying its oral ruling. No such decree was ever filed, but it is clear from the record that the parties and the court considered the prohibition against termination

to have been effective as of that date.[2] We affirm this exercise of the court's equity powers. The trial court in choosing to relieve against forfeiture of the lease was not precluded from imposing reasonable conditions for the grant of relief. *Cf. Fleming v. Napili Kai, Ltd., supra.* At this point, the question becomes not what damages are awardable for the breach of covenant but whether the conditions imposed were fair and reasonable. We think they were. The lessee had the option of either rescinding the unpermitted transactions or paying the fair market rental from and after April 25, 1973. And inasmuch as the fair market rental established by the court was in excess of the rental payable under the lease and was not less than the rental being charged under the subleases, we do not find the trial court's determination in this regard to be unjust and unfair to the lessor. *Cf. Bedell Co. v. Harris,* 228 App.Div. 529, 240 N.Y.S. 550 (1930). We do find, however, that fairness and consistency require the inclusion of the Liquor Haven area in the determination of the amounts due and owing to the lessor on the basis of the increased rental.

V

We now reach the thorny issue of costs and attorney's fees. No attorney's fees may be awarded as damages or costs unless so provided by statute, stipulation, or agreement. *Shoemaker v. Takai,* 57 Haw. 599, 561 P.2d 1286 (1977); *Uyemura v. Wick,* 57 Haw. 102, 551 P.2d 171 (1976). The lease provided for the payment of the lessor's expenses and a

---

[2] The following is from the transcript of the proceedings held on April 25, 1973:

MR. DODD: And are you saying that as of today, then the transaction must be turned around, or are you saying that they must now consent?

THE COURT: Well, this is at the option of your clients if you want to turn it around and then you have the problem as to the amount of the lease to be paid from now till the end of the lease period.

MR. SEKIYA: May I just comment on that. I think what the court is saying is a fair market rental is to be paid until they have turned the transactions around or they may remain as long as they pay fair market rental.

THE COURT: That's right. Because they're in without consent of the lessor.

reasonable attorney's fee where the lessor was compelled by the lessee's breach of covenant to institute legal proceedings, and further provided that the "Lessee shall also pay for all expenses incurred by the Lessor, including attorney's fee, in case the Lessor shall, without any fault on its part, be made a party to any litigation commenced by or against the Lessee, other than condemnation proceedings."

Such an agreement to pay attorney's fees is contemplated and governed by the provisions of HRS § 607-17 which provides as follows:

Any other law to the contrary notwithstanding, where an action is instituted in the district or circuit court on a promissory note or other contract in writing which provides for an attorney's fee the following rates shall prevail and shall be awarded to the successful party, whether plaintiff or defendant:

(1) Where the note or other contract in writing provides for a fee of twenty-five per cent or more, or provides for a reasonable attorney's fee, not more than twenty-five per cent shall be allowed;

(2) Where the note or other contract in writing provides for a rate less than twenty-five per cent, not more than the specified rate shall be allowed;

provided that the fee allowed in any of the above cases shall not exceed that which is deemed reasonable by the court.

To be entitled, therefore, to attorney's fees[3] the awardee must have been the successful party in the proceedings, and the fees awarded, if any, must be reasonable. HRS § 607-17; *Sharp v. Hui Wahine Inc.*, 49 Haw. 241, 413 P.2d 242 (1966).

The trial court in this case determined that neither party was entitled to attorney's fees and costs. It obviously was

---

[3] In the matter of costs, H.R.C.P. Rule 54(d) provides that "[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; . . ."

concerned with the first requirement.[4] We think that the pleadings and the proof call for the application of the rule, broadly stated, that where a party prevails on the disputed main issue, even though not to the extent of his original contention, he will be deemed to be the successful party[5] for the purpose of taxing costs and attorney's fees. *See California Bldg. Co. of San Diego v. Halle*, 80 Cal. App.2d 229, 181 P.2d 404 (1947).

Three basic issues were raised by the pleadings and the proof in this case: (1) Whether the lessor was required to consent to the assignment and subleases; (2) whether these transactions constituted a material breach of the non-assignment covenant of the lease; and (3) whether the lessor was entitled to terminate the lease for material breach of the non-assignment covenant. On all of these principal issues the trial court found in favor of the lessor and held that it was entitled to damages for breach of the covenant. The fact that the trial court refused to allow the lessor to cancel the lease, thereby in effect granting the lessee's prayer for relief against forfeiture of the lease, does not alter the result we have reached. The grant of relief was expressly conditioned upon either the lessee (1) cancelling the assignments and subleases or (2) paying the lessor a higher rental for the remainder of the term. On balance, therefore, the lessor was clearly the successful party in this case. *Cf. Harlan Coal Co. v. North American Coal Corp.*, 35 F.2d 211 (D.C. Ohio, 1929); *De Witt v. Liberty Leasing Co.*, 499 P.2d 599 (Alaska, 1972); *Dobbins v. Horsfall*, 58 Cal. App. 2d 23, 136 P.2d 35 (1943); *Ozias v. Haley*, 141 Mo. App. 637, 125 S.W. 556 (1910).

---

[4] In denying the lessor's motion to reconsider its earlier refusal to allow the lessor its costs and attorney's fees, the circuit court commented:

Well, the Court is concerned about the question as to whether under this term of the lease — you know, for expenses — whether the Court's view that there has not been a clear cut victory prevailing or not prevailing on either party is a view that can be sustained.

[5] For other judicial definitions of "successful party" or "prevailing party" in other contexts, see Annotation, 66 A.L.R.3d 1115. See also Christian v. Waialua Agr. Co., 32 Haw. 30 (1931) ("prevailing party" on appeal).

Successful defendants are not denied, by HRS § 607-17, the benefits of a contractual provision allowing an attorney's fee. By providing for an award to a successful defendant in an action on a promissory note, the legislature made it plain that an attorney's fee may be awarded although the defendant is not otherwise entitled to a money judgment against the plaintiff. We believe that it is equally clear that this statute was not intended to render inoperative a contract governing the allocation of expenses and attorney's fees in litigation which involves only an adjudication of rights and in which no monetary liability is in issue.

We further conclude that HRS § 607-17 does not limit the recovery to which the lessor may otherwise be entitled under the lease to twenty-five per cent of the nominal damages which we have determined should have been awarded for the lessee's breach of its covenant. The present litigation was instituted by the lessee to obtain a declaratory adjudication of the question whether the lessor was required to consent to the assignments and subleases. The lessor, in its answer and counterclaim, raised for adjudication the issue of whether these transactions constituted a material breach of the lease, and, if they did, whether the lessor was entitled as a consequence to terminate the lease. Success by the lessor on these basic issues did not and could not result in a money judgment to which the twenty-five per cent limitation could be applied. The award of damages in this case was merely incidental to the principal relief sought by the pleadings. HRS § 632-3. *Cf. Hawaiian Government v. Brown,* 6 Haw. 750, 752-753 (1889). The attorney's fee to which the lessor is entitled must be adjudicated on the remand of this case, and must be limited to that which was reasonably and necessarily incurred by the lessor to protect his interests under the lease.

The cause is remanded for modification of judgment and for further proceedings consistent with this opinion.

*William H. Dodd (Chun, Kerr & Dodd,* of counsel, *Carroll S. Taylor* on the brief) for plaintiff-appellant, cross-appellee.

*Ronald W. K. Yee (Case, Stack, Kay, Clause & Lynch,* of counsel) for defendant-appellee, cross-appellant.

CONCURRING AND DISSENTING OPINION OF KIDWELL, J.

I concur in all aspects of the majority opinion in this case, except the conclusion in part IV that the lessor is entitled to fair market rental as determined by the trial court for the period of the lease subsequent to April 25, 1973. The fact which controls, in my opinion, is that the lessor did not terminate the lease. So long as the lessor permitted the lease to remain in effect, the lessor's damages should be limited to those awardable for the lessee's breach of the non-assignment covenant.

The parties were defending clearly-defined positions. The lessee sought a declaration of its right to assign or sublet and an injunction against termination of the lease. The lessor counterclaimed for a declaration of its right to terminate the lease and for damages, costs and attorney's fees. Whatever its reasons, the lessor chose not to commit itself to its remedy of termination of the lease. The majority opinion makes it clear that the lessor was not entitled to recover from the lessee more than nominal damages while the lease remained in effect. I am unable to perceive why the trial court's award of damages to the lessor, in the form of increased rent, has more validity for the period after April 25, 1973 than for the earlier period.

The majority appears to argue that the lessee got what it was seeking, in the form of a restraint upon the exercise of the lessor's right of termination, and must take with it the unseverable condition which the court attached and which required the lessee to do one of two things, both of which it had strenuously resisted. The lessee has taken the only course open to it in order to escape from its dilemma, by appealing to this court. I see no suitable way of dealing with the case before us except to reverse both the adjudication that the lessor could not terminate the lease and the award of damages for its loss of that right.

This disposition would put the parties where they left themselves, *i.e.*, with the lessee vulnerable to a right of termination which the lessor chose not to exercise. We would thereby avoid entanglement in the affairs of these parties,

who have obviously been employing against each other all of their strategical and tactical skills. Although the resolution of the problem which has been adopted by the majority does not offend my sense of fairness, I feel obliged to dissent in the particulars stated.