**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000605
18-SEP-2024
08:08 AM
Dkt. 82 SO**

NO. CAAP-20-0000605


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


WILLARD J. RAPOZA, SR., Plaintiff-Appellant/Cross-Appellee, v.
TINA L. ARCHER; MCLAUGHLIN HOLDINGS, LLC,
a Hawai'i limited liability company; and CARE HAWAII, INC.,
Defendants-Appellees/Cross-Appellants.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CASE NO. 3CC18100229K)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth and McCullen, JJ.)

Plaintiff-Appellant/Cross-Appellee Willard J. Rapoza,

Sr. (**Rapoza**), appeals from the Circuit Court of the Third

Circuit's[1] September 9, 2020 Judgment; August 14, 2020 "Findings

of Fact, Conclusions of Law, and Order"; and March 3, 2020

"Order Denying Plaintiff's Motion for Summary Judgment[.]"

Defendants-Appellees/Cross-Appellants Tina L. Archer (**Archer**),

---

[1] The Honorable Robert D.S. Kim presided.

McLaughlin Holdings, LLC (**McLaughlin II**), and CARE Hawaii, Inc. (**CARE**) (collectively **Defendants**) appeal from the circuit court's July 14, 2020 "Order Denying Defendants Tina L. Archer, McLaughlin Holdings, LLC and CARE Hawaii, Inc.'s Second Motion for Summary Judgment."

For a brief background, in 1987, Rapoza's parents leased a roughly half-acre Kealakekua vacant property (**Property**) to Ivan and David Basque for a 56-year term, from 1987 to 2043 (**Lease**).

In 2006, member-managed McLaughlin Holdings, LLC (**McLaughlin I**), formed by Archer and her husband, purchased the Lease for $489,000. Archer was also the sole shareholder of CARE, which took possession of the Property to provide substance abuse and crisis management services and made about $100,000 in improvements. CARE made all payments the Lease required since it took possession of the Property. But CARE had cash flow issues at times due to late payments from the State of Hawaiʻi for services provided under various contracts.

In 2009, the State of Hawaiʻi Department of Commerce and Consumer Affairs (**DCCA**) administratively terminated McLaughlin I for "failure to file an annual report for a period of two years" or nonpayment of fees. In February 2014, Archer learned of the termination when CARE was renewing its insurance policy.

2

On February 12, 2014, McLaughlin II was formed with Archer as its member and registered agent.

In 2016, Rapoza inherited the Property from his parents. In February 2017, Rapoza notified Archer of his intent to terminate the Lease due to McLaughlin I's administrative termination. Rapoza then offered to enter into a new lease, increasing the rent from the $625 per month CARE was paying to $4,000 or $5,000 per month.

In 2018, Rapoza filed the underlying complaint seeking: (1) a declaratory judgment stating the Lease was terminated based on the administrative termination of McLaughlin I; (2) an order ejecting McLaughlin II and CARE from the Property based on the termination of the Lease; and (3) an order declaring the Lease terminated based on material breach for late payment of rent.[2]

Following a bench trial, the circuit court ruled in favor of Defendants on all counts. Rapoza timely appealed.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the issues raised and the arguments advanced, we resolve the points of error as discussed below, and affirm.

---

[2] Rapoza challenges numerous findings and conclusions in his points of error, but does not analyze how each finding was erroneous or how each conclusion was wrong in his argument. Instead, Rapoza appears to address these findings and conclusions in the context of his argument. We address the challenged findings and conclusions in the same manner.

**(1)** In his first and second points of error, Rapoza contends the circuit court erred in concluding the DCCA's administrative termination of McLaughlin I was not a material breach of the Lease. Rapoza also argues the circuit court erroneously concluded he was required to provide written notice of the breach and a twenty-day opportunity to cure the breach. Contrary to Rapoza's contentions, the circuit court did not err.

"A lease to a [corporate entity] may, by its terms, terminate where the [entity] ceases to exist. But unless the lease so provides, the rights and obligations thereunder are not extinguished by the [entity's] dissolution, since leases affect property rights and survive the death of the parties." Perry v. Shaw, 13 So.2d 811, 812 (Fla. 1942) (cleaned up).

To support his argument that the language of the Lease provided for its termination, Rapoza quoted the following language from the "Default" provision in the Lease:

> "This demise is upon and subject to the [continuing] condition that . . . if any assignment . . . is made of the Lessees' property for the benefit of creditors . . . the Lessors may . . . terminate the lease[.]"

(Emphases omitted.) Rapoza then attempted to tie this excerpt to the requirement to carry insurance on the Property to show

Archer could not indemnify him for any losses.  However, the language Rapoza relies on does not support his argument that the Lease provided for its termination upon McLaughlin I's administrative termination.  In any event, in an unchallenged finding, the circuit court noted testimony showed CARE "always maintained insurance required by the Lease for the Property."

Moreover, section 8 of the Lease required Rapoza to provide written notice of the breach and opportunity to cure before enforcing any forfeiture:

> before any forfeiture shall be enforced, the Lessors shall give written notice by registered mail to the Lessees of the breach constituting the ground of forfeiture and the Lessees shall have twenty (20) days from the date of receipt of such notice by them within which to remedy or cure such breach, and if such breach shall be so cured or remedied, then such breach shall be waived and no forfeiture shall be enforced for such breach[.]

(Emphasis added.)  To the extent McLaughlin I's administrative termination could result in a forfeiture, Rapoza does not point to evidence in the record indicating he provided written notice and opportunity to cure pursuant to section 8.  See Onaka v. Onaka, 112 Hawaiʻi 374, 387, 146 P.3d 89, 102 (2006) (explaining "[w]e have repeatedly warned that an appellate court will not sift through a voluminous record" where appellant fails to provide citations to the record).

Thus, the circuit court did not err in denying Rapoza's request for a declaratory judgment stating the Lease was terminated due to McLaughlin I's administrative termination.

**(2)** Next, Rapoza contends the circuit court "abused its discretion in concluding that if [Defendants] did materially breach, they are entitled to equitable relief from forfeiture." (Emphasis omitted.) However, the circuit court acted within its discretion in exercising its equitable powers.

"In an action for declaratory judgment, the court is empowered to grant ancillary equitable relief." Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc., 58 Haw. 606, 613, 575 P.2d 869, 875 (1978). "And in the exercise of its general equity jurisdiction over forfeitures and penalties, it may afford relief against forfeiture for the breach of a covenant in a lease." Id. at 613, 575 P.2d at 876. "Equity does not favor forfeitures, and where no injustice would thereby be visited upon the injured party, equity will award him compensation rather than decree a forfeiture against the offending party." Id. at 614, 575 P.2d at 876. Absent "gross negligence" or "persistent and wil[l]ful conduct" and where the "lessor can reasonably and adequately be compensated for his injury, courts in equity will generally grant relief." Id.

Here, the circuit court concluded the two late payments (paid more than twenty-days after the rent was due) did not require forfeiture as Defendants invested substantial amounts in obtaining the Lease and improving the Property to support its use as a transitional housing and crisis management facility. The circuit court further concluded the two late rent payments were not due to gross negligence or willful conduct, and Rapoza suffered no injury since he cashed the checks.

The record supports the facts underlying the circuit court's conclusion, and it appears the circuit court did not disregard rules or principles of law to Rapoza's substantial detriment in exercising its equitable powers. Thus, the circuit court did not abuse its discretion.

**(3)** In his final point of error, Rapoza contends the circuit court erred in concluding he "breached the lease by filing [the] lawsuit."

"When parties have differing positions as to the meaning of a contractual term, it [cannot] be deemed a breach for one party to sue to enforce its view of the contract," when the contract "does not contain a covenant not to sue." Bridgeport Music, Inc. v. Universal Music Grp., Inc., 440 F.Supp.2d 342, 345 (S.D.N.Y. 2006).

The circuit court concluded Rapoza breached the Lease when he filed the underlying complaint:

> "77. Plaintiff breached the Lease by bringing suit for payments made over twenty days after the date due, without providing Plaintiff [sic] with notice of default and twenty days to cure such default as required by the Lease. Therefore, Plaintiff cannot maintain this action against Defendants."

In this case, the Lease did not contain a covenant not to sue. But, as discussed above, section 8 requires written notice and an opportunity to cure before any forfeiture can occur. Again, Rapoza does not point to evidence in the record indicating he provided written notice and opportunity to cure. See generally, Onaka, 112 Hawai'i at 387, 146 P.3d at 102.

Thus, as Rapoza's claims against Defendants otherwise lack support, we conclude the circuit court's error in conclusion 77 is harmless and does not require vacating the judgment.

**(4)** In their sole point of error on cross-appeal, Defendants contend the circuit court erred in denying their second motion for summary judgment. However, because we affirm the circuit court's judgment in favor of Defendants, their cross-appeal is moot. See Leone v. Cnty. of Maui, 141 Hawai'i 68, 89, 404 P.3d 1257, 1278 (2017) (explaining that "because we

affirm the circuit court's judgment in favor of the County, we find its cross-appeal moot").

Based on the foregoing, we affirm the September 9, 2020 Judgment.

DATED:  Honolulu, Hawaiʻi, September 18, 2024.

On the briefs:

Jason R. Braswell,
Terri Fujioka-Lilley,
Dawn H. Laird,
For Plaintiff-Appellant/
Cross-Appellee.

Paul M. Saito,
Lindsay N. McAneeley,
(Cades Schutte),
for Defendants-Appellees/
Cross-Appellants.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge